Kathleen E. Bertram v. Commissioner.
Bertram v. Commissioner
Docket No. 2819-66.
United States Tax Court
T.C. Memo 1968-195; 1968 Tax Ct. Memo LEXIS 102; 27 T.C.M. (CCH) 953; T.C.M. (RIA) 68195; September 3, 1968. Filed *102 Held, that the petitioner, in rendering stenographic and secretarial services to various law firms and corporations for short periods during the years in question, was acting as an employee, and not as an independent contractor, and that the remuneration which she received for such services did not constitute self-employment income subject to the tax imposed by section 1401 of the Internal Revenue Code of 1954. Kathleen E. Bertram, pro se, P.O. Box 899, Grand Central Station, New York, N. Y. Charles M. Costenbader and Marvin A. Fein, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax (tax on self-employment income) in the amounts of $175.54 for the taxable year 1962 and $259.20 for the taxable year 1963. The sole issue is 954 whether the petitioner was self-employed during the years in question and therefore subject to the tax on self-employment income imposed by section 1401 of the Internal Revenue Code of 1954. Findings of Fact At the time the petitioner filed her petition her legal residence was New York City, New York. She filed Federal income tax returns for the taxable years 1962 and 1963 with the district director of internal revenue, Manhattan, New York, on the basis of a calendar year. For many years the petitioner has been a stenographer and secretary. During the years in question she was over 65 years of age and was in poor health. As a consequence, she *105 worked only when she felt able to do so. In those years she rendered stenographic and secretarial services to various law firms (and occasionally to corporations) in New York City for short periods. Many jobs were for a single day, some were for several days or a week, and a few were for more than a week, the longest period being 5 weeks. She customarily obtained jobs through private employment agencies or the New York State Employment Service. These employment agencies referred her to various law firms and corporations which needed stenographic or secretarial services on a temporary basis. The agencies also told her the hours she would be expected to work and the pay she would receive for her services. Petitioner would then decide whether she wished to accept the work offered. If she did not feel physically able to work on a particular day, she did not accept work for that day; however, she did strive to keep any job commitments which she made. She personally paid the fees charged by the private employment agencies, consisting of a percentage of her remuneration. The New York State Employment Service made no charge. When petitioner accepted work for a firm she performed the services *106 on its premises and used its equipment. She has never owned a typewriter. She observed the same working hours as the permanent employees, generally from 9:30 a.m. to 5:30 p.m. Her lunch period was generally specified by her employers, although she was occasionally given a choice as to when she might eat lunch. She took coffee breaks on the same basis as did the permanent employees. She did not feel physically able to, and did not, work overtime. In all the firms for which she worked, the petitioner performed only such duties as she was directed to perform. She never represented herself to such firms as being a public stenographer. When working for a law firm she was assigned to a particular lawyer who specifically prescribed her duties and supervised her work in detail. Her duties consisted generally of taking dictation and typing, and sometimes answering the telephone. The material dictated consisted of bills of particulars, agreements, minutes of meetings, leases, wills, affidavits, complaints, answers, letters, etc. The lawyers would sometimes have her retype the same material over several times in draft form. Sometimes her duties consisted of merely re-typing drafts of material *107 which had been typed by someone else and corrected by the lawyer for whom she was working. Petitioner was paid the customary daily or weekly rate for secretaries and stenographers. If she was called to come to work after 9:30 a. m. she was paid proportionally less. She received her pay at the end of the period of her employment, either at the end of the day if she was working on a daily basis, or at the end of the week if her employment was for a week or more. Sometimes, at the request of the firm for which she worked, the petitioner rendered a bill for stenographic services in which she stated the number of days of work, the rate per day and the total amount. Such bills were generally requested in order that the firm could make proper charges to its clients. Petitioner worked for 47 law firms and one corporation during 1962, on 67 different occasions. She received a total of $3,734.89 from those sources. Twenty-one law firms withheld income tax (pursuant to section 3402 of the Internal Revenue Code of 1954) in the amount of $306.15 and Federal Insurance Contributions Act [F.I.C.A.] tax on employees (pursuant to section 3102 of the Code), of $62.31, *108 with respect to remuneration totaling $1,991.93. The other law firms, and the corporation, did not withhold. One of the law firms withheld the taxes on one occasion and not on another. Petitioner worked for 60 law firms and 2 corporations during 1963, on 104 occasions. She received a total of $4,979.74 from these sources. Sixteen law firms withheld income tax of $208.25 and F.I.C.A. tax of $50.15, with respect to remuneration totaling $1,367.99. The other law firms and the two 955 corporations did not withhold. One law firm withheld the taxes on one occasion, but did not do so on four other occasions. Petitioner did not know in advance whether her prospective employers intended to withhold such taxes. At one time in her career, petitioner asked her employers to withhold such taxes, but during the years in question she did not, and when they were not withheld she did not make inquiry as to the reason. In her Federal income tax returns for the taxable years 1962 and 1963, the petitioner reported gross income of $3,904.84 and $5,195.50, respectively, of which $3,711.89 and $4,979.74, respectively, was shown as wages. In neither return did she report any self-employment income *109 or tax due on self-employment income. [1]
In the notice of deficiency, the respondent determined that "for the years 1962 and 1963 you are subject to the self-employment tax imposed by section 1401 of the Internal Revenue Code of 1954." The firms for which the petitioner worked during the taxable years 1962 and 1963 had the right to, and did, control and direct her, not only as to the results to be accomplished by her work, but also as to the details and means by which those results were accomplished. During such years she was an employee of such firms. Opinion The only issue before us is whether, as the respondent determined, the income which the petitioner received in the taxable years 1962 and 1963 from the rendition of stenographic and secretarial services was "self-employment *110 income" subject to the tax imposed by section 1401 of the Internal Revenue Code of 1954. Section 1402 of the Code [2] defines "self-employment income" as the net earnings from self-employment by an individual, and "net earnings from selfemployment" as "the gross income derived by an individual from any trade or business carried on by such individual," less appropriate deductions. It excludes from the definition of "trade or business," when used with reference to self-employment income or net earnings from self-employment, the performance of service by an individual as an employee, with certain exceptions not here material. And it further provides that the term "employee" shall have the same meaning as when used in chapter 21 (section 3101 and following, relating to Federal Insurance Contributions Act). *111 Section 3121(d) of the Code provides that the term "employee" shall include, among other things, "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." Section 1.1402(d)-1 of the Income Tax Regulations refers to the Employment Tax Regulations for an explanation of the term "employee" as used in section 1402 of the Code. Set forth in the margin are the pertinent provisions of such regulations. [3]
*112 956 In deciding whether an individual is an employee or an independent contractor, each case must be decided on the basis of its own facts. Various factors are to be considered, including "degree of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required," but no one factor is controlling. United States v. Silk, 331 U.S. 704. See also Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Higgins, (C.A. 2) 189 F. 2d 865. The most important element, however, is the degree of control. See S. Rept. No. 1255, 80th Cong., 2nd Sess., accompanying Public Law 642, 62 Stat. 438, which first specifically provided for the application of the usual common law rules in determining whether there existed an employer-employee relationship and which was discussed in the Ringling Bros. case. See also Alsco Storm Windows, Inc. v. United States, 311 F. 2d 341. The evidence presented in the instant case establishes to our satisfaction that the various firms for which the petitioner worked during the years in question had the right to, and in fact did, control and direct her, not only as to the results *113 to be accomplished, but also as to the details and means by which those results were accomplished, and we have so found as a fact. The petitioner so testified and described in some detail the type of work which she did and the supervision to which she was subject. [4] We think there can be no doubt that due to her experience the petitioner did have great skill as a secretary and stenographer, as contended by the respondent, but as stated, we are satisfied that she was not engaged to exercise such skill without detailed supervision. Furthermore, the petitioner had no opportunity for profit or loss from such work other than the compensation agreed upon. She had no investment in facilities, using the equipment of the persons who engaged her services and performing such services on the premises of such persons. The respondent makes much of the fact that during the years in question the petitioner had accepted jobs with many employers, many of such jobs being *114 for the duration of only one day, and contends that there was lacking any element of permanency of employment, which he contends is essential to an employer-employee relationship. However, the matter of permanency is but one of the factors to be considered. United States v. Silk, supra.See Rev. Rul. 63-115, 1963-1 C.B. 178. The respondent contends that the fact that the petitioner accepted so many different jobs during the years in question indicates that she was acting as a public stenographer and hence was an independent contractor, as provided by the regulations quoted hereinabove. However, she testified that at no time did she represent to any of the firms for which she worked that she was a public stenographer. In view of this testimony and the fact that she performed her services for the various firms on their premises, using their equipment, and was subject to detailed supervision by them, we are satisfied that, as to the services here involved, she was not acting as an independent contractor. [5]
*115 In view of the foregoing, it is our conclusion that the respondent erred in his determination that the income in question herein constituted self-employment income subject to the tax imposed by section 1401 of the Code. Decision will be entered for the petitioner. 957 Footnotes
1. In computing her taxable income for 1962, the petitioner claimed as itemized deductions $266.34 as fees paid to six employment agencies (including $4,40 paid to the New York Law Journal). In computing her taxable income for 1963, she claimed as itemized deductions $112.45 as fees paid to three employment agencies, and $44.00 as "Business expense, cards, stationery, stamps, phone."↩
2. Section 1402 of the Code provides as follows: (a) Net Earnings from Self-Employment. - The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss described in section 702(a)(3) from any trade or business carried on by a partnership of which he is a member; * * * (b) Self-Employment Income. - The term "self-employment income" means the net earnings from self-employment derived by an individual (other than a nonresident alien individual) during any taxable year; * * * (c) Trade or Business. - The term "trade or business," when used with reference to self-employment income or net earnings from self-employment, shall have the same meaning as when used in section 162 (relating to trade or business expenses), except that such term shall not include - * * * (2) the performance of service by an individual as an employee * * *. * * * (d) Employee and Wages. - The term "employee" and the term "wages" shall have the same meaning as when used in chapter 21 (sec. 3101 and following, relating to Federal Insurance Contributions Act).↩
3. Section 31.3121(d)-1(c) of the Employment Tax Regulations provides as follows: Common law employees. - (1) Every individual is an employee if under the usual common law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee. (2) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection. it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control of or discretion of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee under the usual common law rules. Individuals such as physicians, lawyers, dentists, veterinarians, construction contractors, public stenographers, and auctioneers, engaged in the pursuit of an independent trade, business, or profession, in which they offer their services to the public, are inpendent contractors and not employees.↩
4. She testified that "I do whatever I am told to do," that "They even tell you what to do, what not to do," that "I do nothing on my own, independently," and that "Some lawyers will tell you where to put a comma and a period."↩
5. It may be added that such conclusion appears to be in conformity with the position which the respondent has taken in Rev. Rul. 57-93, 1957-1 C.B. 328↩.